UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL RYAN AYLWARD and<br>JERRY PRITCHETT, | )<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| | ) | CIVIL ACTION NO. |
| VS. | )<br>) | 3:19-CV-02211-G |
| CITY OF DALLAS, | )<br>) | |
| Defendant. | )<br>) | |

## MEMORANDUM OPINION AND ORDER

Before the court is defendant City of Dallas' motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the plaintiffs' claims under 42 U.S.C. § 1983.  Defendant's Motion to Dismiss ("Motion") (docket entry 17).  For the reasons stated herein, the motion is **GRANTED**.

### I.  BACKGROUND

#### A.  Factual Background

Michael Ryan Aylward ("Aylward") and Jerry Pritchett ("Pritchett") (collectively, "the plaintiffs") are white males employed by the Dallas Fire-Rescue Department.  First Amended Complaint ("Complaint") (docket entry 14) at 4, ¶ 9 & 7, ¶ 37.  Beginning October 4, 2017, the plaintiffs participated in a two part-assessment as part of the promotional process for lieutenant for the Dallas Fire-

Rescue Department ("the assessment").  Complaint at 2-3, ¶¶ 8-9 & 1.  The assessment consisted of (1) an objective written portion (worth 42% of the candidate's score) and (2) a subjective oral portion (worth 58% of the candidate's score).  *Id.* at 3, ¶¶ 9-10.  After the written portion, Aylward ranked 58 out of 172 candidates, and Pritchett ranked 45 out of 172 candidates.  *Id.* at 3, ¶ 1.

The oral portion was three days long, and each of the 172 candidates was given the same scenario and required to present his or her answer to the scenario before a panel of assessors.  *Id.* at 3, ¶ 2.  There were twelve assessor panels consisting of three assessors each.  *Id.* at 3, ¶ 3.  On each day of the three days, each candidate gave his or her answer to a different assessor group, and each assessor graded the candidates on a scale of four (lowest) to ten (highest).  *Id.* at 3, ¶¶ 4-5.  The average of the scores from each of the three assessors was the candidate's final score on the oral portion of the assessment.  *Id.* at 3, ¶ 5.  The candidates were then ranked based on the aggregate of their scores on the written and oral portions of their test.  *Id.* at 3, ¶ 5.  The list of candidates and their scores, known as the "Promotional List," is used by the City of Dallas to determine eligibility for promotion when vacancies in the Fire-Rescue Department become available.  *Id.* at 3, ¶ 6.  The Promotional List remained in effect for 18 months, and then it expired.  *Id.* at 3, ¶ 7.  Upon completion of the entire exam, Aylward's ranking was 111 and Pritchett's ranking was 121.  *Id.* at 4, ¶ 8.

Sometime thereafter, Aylward came to the conclusion that one of the assessor groups (referred to in the complaint as "Group I") had discriminated against the plaintiffs by incorrectly marking their score sheets and unfairly scoring them in some categories.  *Id.* at 4, ¶ 15; 4, ¶ 11.  The plaintiffs allege that one of the assessors in Group I "demonstrated a strong bias against the Plaintiffs by unfairly scoring [both] of them low in certain categories when compared to Black candidates in those same categories."  *Id.* at 4, ¶ 12.  The plaintiffs aver that out of the 41 candidates in the assessor group at issue, only white candidates were denied promotion.  *Id.* at 4, ¶ 10.  As a result of the plaintiffs' drop in ranking after taking the oral portion of the assessment, they believe that they were denied the opportunity to be promoted to lieutenant.  Motion at 2-3.

In January of 2018, Aylward contacted the assistant director of the City of Dallas' Civil Service Department, Michelle Hanchard ("Hanchard"), to discuss the results and his belief that he had been discriminated against.  *Id.* at 4-5, ¶ 16.  Hanchard did not meet with Aylward, and Aylward subsequently met with fire chief David Coatney ("Coatney") instead.  *Id.* at 5, ¶ 17.  Aylward alleges that Coatney was dismissive of Aylward's problems, and Aylward subsequently filed a grievance with the Civil Service Department in March of 2018.[1]  *Id.* at 5, ¶¶ 17-19.  Aylward's

---

[1] The timeline of events in the plaintiffs' amended complaint is not entirely clear.  However, it appears that Aylward filed his first grievance with the Civil Service Department in March of 2018, not 2019 as stated in the complaint.

grievance was denied because it had not been filed within ten days of the "occurrence, or within ten [] days of his receipt of the knowledge that he had been subjected to racial discrimination." *Id.* at 5, ¶ 19.

The plaintiffs further allege that another employee within the fire department, an African American named Deldrige Williams, had a similar concern about racial discrimination with the Civil Service Department, but was not required to file a grievance. *Id.* at 5, ¶ 20. Aylward filed a second grievance in April of 2018,[2] asking for clarification as to why his first grievance was denied. *Id.* at 5, ¶ 21. Aylward's grievance was again denied, and in May of 2018 he submitted an "Open Records Request" to look at the actual score sheets from the oral portion of the assessment. *Id.* at 5, ¶¶ 22-23.

Aylward looked at the score sheets and claims that the plaintiffs were given "inaccurate" and "inconsistent" markings in their Group I assessment when compared with minority candidates in the same group. *Id.* at 6, ¶¶ 24-26. Following his review of the scores, Aylward filed a third grievance with the Civil Service Department in May of 2018 based on the newly discovered information obtained from his Open Records Request. *Id.* at 6, ¶ 27. The third grievance was also denied as untimely. *Id.* at 6, ¶ 28.

---

[2] The court assumes that Aylward filed his grievance in April of 2018, not 2016, as the complaint alleges.

- 4 -

The plaintiffs allege that the City engaged in racial discrimination by denying them the opportunity to be heard by the Civil Service Division (as compared to their minority counterparts) and by subjecting them to a promotional process which the plaintiffs deem to be "impartial, fair, and unbiased." *Id.* at 6, ¶¶ 31-32. The plaintiffs also allege that the City showed preference to minority candidates in the assessor Group I, thereby denying the plaintiffs the opportunity to be promoted to lieutenant, which in turn denies them the opportunity to test for a captain position in the Dallas Fire-Rescue Department. *Id.* at 6-7, ¶¶ 33-34.

### B.  Procedural Background

On September 16, 2019, the plaintiffs filed their original complaint alleging claims for a violation of 42 U.S.C. § 1983. *See* Original Complaint (docket entry 1). The plaintiffs also filed an emergency motion for a temporary restraining order, requesting that the court delay the captain's exam that was scheduled for the entire Dallas Fire-Rescue Department on September 18, 2019 until either the defendant or the court addressed the plaintiffs' claims. *See* Emergency Motion for Temporary Restraining Order ("Motion for a TRO") (docket entry 3). On September 17, 2019, the City of Dallas filed a response and objection. *See* Response and Objection (docket entry 8). Also on September 17, the court held a telephonic hearing, during which the court denied the plaintiffs' motion for a TRO. *See* Telephonic Hearing (docket entry 10); Order Denying Emergency Motion for Temporary Restraining

Order (docket entry 11).

On December 17, 2019, the court ordered the plaintiffs to show cause as to why the plaintiffs' claims should be retained on the docket.  Order to Show Cause (docket entry 12).  On December 27, 2019, the plaintiffs filed an amended complaint.  *See* Complaint.  Shortly thereafter, on January 2, 2020, the City of Dallas filed its first motion to dismiss the plaintiffs' § 1983 claims against the three original plaintiffs: Aylward, Pritchett, and Aaron Bruce.  *See* First Motion to Dismiss (docket entry 15).  On January 8, 2020, the City of Dallas then filed a second motion to dismiss the plaintiffs' § 1983 claims, but this time against only two of the plaintiffs: Aylward and Pritchett.  Motion at 1.  On January 23, 2020, the parties filed a joint stipulation of dismissal as to Aaron Bruce, leaving Aylward and Pritchett as the two remaining plaintiffs.  *See* Notice of Dismissal (docket entry 18).  On January 24, 2020, the court denied the first motion to dismiss as moot, making the January 8, 2020 motion to dismiss the operative motion.  *See* Order (docket entry 19).  On January 28, 2020, the plaintiffs filed a response.  *See* Response (docket entry 20).  On February 11, 2020, the City of Dallas filed a reply.  *See* Reply (docket entry 21).  The defendant's motion to dismiss is now ripe for decision.

## II.  ANALYSIS

### A.  Motion to Dismiss Legal Standard

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead

'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182 (2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." *Twombly*, 550 U.S. at 555 (citations, quotations marks, and brackets omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6). See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. The court should then assume the veracity of any well-pleaded

allegations and "determine whether they plausibly give rise to an entitlement of relief." *Id*. The plausibility principle does not convert the Rule 8(a)(2) notice pleading standard to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss. *Id*. at 678. The plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (alteration in original) (quoting Federal Rule of Civil Procedure 8(a)(2)). The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiff's allegations "nudge" his claims against the defendant "across the line from conceivable to plausible." See *id*. at 679, 683.

### B. Section 1983 Claim

To state a valid claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), overruled in part on other grounds by *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986), and *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155 (1978)).

1. *Valid 1983 Claim*

"Section 1983 does not create any substantive rights; it creates only a remedy for the violation of a substantive federal right." *Jackson v. City of Atlanta, Texas*, 73 F.3d 60, 63 (5th Cir.) (citing *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 28 (1981)), *cert. denied*, 519 U.S. 818 (1996). The Fifth Circuit has expressly held that a violation of Title VII cannot support a § 1983 lawsuit. *Id.*

The plaintiffs have generally alleged discrimination based on race in their complaint, but have failed to allege a constitutional claim. In addition, the only statutory claim the plaintiffs have alleged is under Title VII, which cannot support a § 1983 suit. *Id.*; See *Bullocks v. Office of Harris County Constable*, No. H-11-2049, 2012 WL 4356282, at n.5 (S.D. Tex. Sept. 24, 2012) (finding "[p]laintiff has not alleged constitutional claims and the only statutory claims alleged are race and sex discrimination under Title VII. Plaintiff, therefore, has not pled a separate § 1983 claim upon which relief can be granted.").

2. *Municipal Liability*

Even if it be assumed *arguendo* that the plaintiffs have pled a valid claim under § 1983, that claim must fail because the plaintiffs have failed to plead sufficient facts to establish municipal liability against the City of Dallas. "Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of

constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1998)), *cert denied*, 534 U.S. 820 (2001). The plaintiffs must establish all three elements of municipal liability in order to determine that the discrimination can be attributed to the government itself, and not simply a single employee. *Id.*

>   According to the Fifth Circuit, an official policy is:
>
>> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>>
>> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc), *on reh'g*, 739 F.2d 993 (5th Cir. 1984). The Supreme Court has provided further guidance: "[o]fficial municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). In

addition, a "city cannot be liable for an unwritten custom unless 'actual or constructive knowledge of such custom' is attributable to a city policymaker." *Peña v. City of Rio Grande City, Texas*, 879 F.3d 613, 623 (5th Cir. 2018) (quoting *Hicks-Fields v. Harris County, Texas*, 860 F.3d 803, 808 (5th Cir.), *cert denied*, _ U.S. _, 138 S. Ct. 510 (2017)).

Courts in the Fifth Circuit, and in the Northern District of Texas specifically, have consistently held that, although a plaintiff need not offer proof of the official municipal policy at the pleading stage, he must "plead facts that plausibly support each element of § 1983 municipal liability." *Id.* at 621; see also *Ross v. City of Dallas, Texas*, No. 3:17-CV-00570, 2018 WL 5980495 at *5-6 (N.D. Tex. Nov. 14, 2018) (Lindsay, J.) (dismissing a § 1983 municipal liability case after the plaintiff failed to adequately plead an official municipal policy).  The Fifth Circuit has even gone so far as to say that "[t]he description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Department*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. Arlington*, 957 F.2d 1268, 1277 (5th Cir. 1992)).

The plaintiffs in this case have failed to allege an official municipal policy with sufficient facts.  The plaintiffs essentially claim that the City of Dallas had a "policy" (though, the plaintiffs never refer to it as such) whereby the assistant director of the Civil Service Department, Michelle Hanchard, would refuse to meet the plaintiffs to

discuss their concerns. Complaint. at 4-5, ¶ 16. The plaintiffs also claim that the City of Dallas has "continuously refused to review the information" that the plaintiffs presented to the City "showing that they were subject to racial discrimination by the assessors." *Id.* at 6, ¶ 29. The court concludes that these allegations do not support the plaintiffs' claim that they were subjected to an official municipal policy that was discriminatory.

The City of Dallas appears to have a system that requires an aggrieved party to file his or her grievance with the Civil Services Department in a timely manner. *Id.* at 6, ¶ 27. That the plaintiffs failed to timely file their grievance, or that a singular other individual who happened to be African American was able to meet with the director of the Civil Service Department, does not establish a policy or "practice[] so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. at 61; see also *S.N.B. v. Pearland Independent School District*, 120 F. Supp. 3d 620, 637 (S.D. Tex. 2014) (finding that the plaintiff was required to prove that the "final policymaker" approved of the policy, not simply that a handful of employees committed violations).

The plaintiffs also claim that "one of the assessors" in their assessment group demonstrated "strong bias" by unfairly scoring them when compared to other candidates in the same categories. *Id.* at 4, ¶ 12. In *Spiller,* the Fifth Circuit rejected as "vague and conclusory" the plaintiff's argument that his arrest was carried out

- 12 -

pursuant to a general policy of totally "disregard[ing] . . . the rights of African American citizens." 140 F.3d at 167. The plaintiffs in this case do not even allege that the supposed discrimination they faced was based on any sort of policy, merely that it happened to them once when one member of one assessment group scored them lower on their exam. Again, this allegation comes nowhere close to alleging a policy or "practice[] so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61.

In summary, the court concludes that the plaintiffs have failed to sufficiently allege a statutory or constitutional violation in support of their § 1983 claims, and that they have further failed to allege a discriminatory official municipal policy that would subject the City of Dallas to municipal liability.

### III. CONCLUSION

For the reasons stated above, the defendant's motion to dismiss the plaintiffs' § 1983 claim pursuant to Rule 12(b)(6) is **GRANTED**.

**SO ORDERED**.

May 15, 2020.

_____
A. JOE FISH
Senior United States District Judge